**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIM. NO.  98-00183-WS-C** |
| | ) | **98-00184-WS-C** |
| **PERRY MALONE** | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO COMPASSIONATE RELEASE

A jury found Perry Malone ("Malone") guilty of numerous drug charges, and former judges of this Court sentenced Malone to serve life in prison. Malone participated in a dangerous drug conspiracy in which one conspirator was murdered. He also amassed a series of other convictions prior to his life sentences. Now, Malone moves for compassionate release. He invokes his mother's declining health, the length of his sentence, and his rehabilitation as his primary grounds for compassionate release. As set out below, Malone has not demonstrated his eligibility for release. Nor has he shown that this Court should exercise its discretion to release him even if he is eligible. Thus, the United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, respectfully opposes Malone's motion for release.

## I.  Background

Malone participated in multiple large-scale drug conspiracies that yielded federal charges. [PSI, 7–9]. He was "a well[-]known drug distributor" in Mobile, Alabama,

1

who "received large quantities of drug[s] from shipments he received from California." [*Id.* at 8]. In one conspiracy, Malone worked with Lummie Lee Lung, III, and other individuals to distribute drugs. [*Id.* at 7–8]. For another conspiracy, Malone worked with Vivian Ann Brown ("Brown") and other coconspirators to distribute drugs. [*Id.* at 8–9]. Malone's presentence investigation report (the "PSI"), which provides details on his offenses, is part of the record. [Case No. 98-183, Doc. 281, 1 n.1; Case No. 98-184, Doc. 293, 1 n.1].

Summarizing the trial evidence in Case No. 98-184, the Eleventh Circuit noted that "[d]uring a six-week period in 1997, Malone paid $60,000 for approximately two kilograms of crack cocaine." [Case No. 98-184, Doc. 218, 4]. The following year, "Malone twice bought several ounces of crack cocaine directly from Brown." [*Id.*]. The Eleventh Circuit also noted that Brown subsequently "was murdered" before Malone's trial. [*Id.* at 6]. Juries subsequently found Malone guilty of numerous federal charges that stemmed from his drug activity. [Case No. 98-183, Doc. 281, 1–2; Case No. 98-184, Doc. 293, 1–2].

A probation officer found that Malone perjured himself in Case No. 98-183. [PSI, 11]. During a presentence interview, Malone "did not express remorse for his actions" and did not provide any statements that "would indicate acceptance of responsibility." [*Id.* at 9]. The probation officer also described Malone's criminal history. [*Id.* at 12–14]. Malone previously committed a burglary (for which he was

2

adjudicated as a youthful offender), reckless endangerment, receiving stolen property, and a series of drug-related offenses. [*Id.*]. His criminal history category was a VI out of VI under the framework in the United States Sentencing Guidelines (the "Guidelines"). [*Id.* at 14].

During Malone's sentencing hearing in Case No. 98-183, the Court found that Malone provided false testimony. [Case No. 98-183, Doc. 260, 71]. The Court observed that Malone gave testimony that was "contrary to all of the witnesses who testified in the case." [*Id.*]. At the sentencing hearing, Malone elected to lob a series of accusations at various participants in his case in open court as part of an effort to disqualify his trial counsel. [*Id.* at 8–10]. Malone alleged that his counsel failed to properly represent him. [*Id.* at 10–11]. Among a string of allegations, Malone accused a former prosecutor of lying and claimed that two law enforcement officers involved in his investigation asked a witness to lie about Malone's drug distribution activities. [*Id.* at 27]. The judge who presided over this proceeding remarked that he was "not surprised" by Malone's "attitude" because Malone had conducted himself in that manner "throughout the trial and throughout all of these proceedings." [*Id.* at 75]. The Court imposed a life sentence in Case No. 98-183 in accordance with a then-applicable statute that mandated a life sentence based on Malone's criminal history. [*Id.* at 76–77].

Malone faced a statutory life sentence in Case No. 98-184 as well. [Case No. 98-184, Doc. 270, 5]. At that sentencing hearing, Malone claimed "that the government

ha[d] violated all of [his] rights." [*Id.* at 11]. He faulted the Court for an alleged failure to properly investigate these allegations. [*Id.*]. The separate judge who presided over these proceedings imposed a life sentence, too. [*Id.*].

On direct appeal, the Eleventh Circuit affirmed Malone's convictions. [Case No. 98-183, Doc. 217; Case No. 98-184, Doc. 218]. Malone filed post-conviction challenges pursuant to 28 U.S.C. § 2255, and this Court rejected them. [Case No. 98-183, Doc. 240; Case No. 98-184, Doc. 247]. This Court also denied Malone's motion for a sentence reduction under the First Step Act of 2018 because the Court concluded that he was ineligible under a provision that allowed sentence reductions for certain crack cocaine offenders. [Case No. 98-183, Doc. 281, 7; Case No. 98-184, Doc. 293, 7].

Next, Malone—through counsel—moved for compassionate release. [Case No. 98-183, Doc. 290; Case No. 98-184, Doc. 302]. Malone filed the same motion in both cases. This opposition cites to the motion in Case No. 98-183. As grounds for compassionate release, Malone cites declines in his mother's health, the length of his sentence, and his rehabilitation. [Case No. 98-183, Doc. 290, 22–33]. In addition, Malone urges the Court to exercise its discretion to conclude that the pertinent factors in 18 U.S.C. § 3553(a) support his release from prison. [*Id.* at 33–36].

Malone's motion notes that Malone's mother has needed care throughout her life but claims that other individuals now are unable to provide for her care. [*Id.* at 20–21]. Malone's sister indicated in a letter to the Court that Malone's mother began living

4

with other family members roughly two decades ago.  [Case No. 98-183, Doc. 290-1, 23–24].  A physician who reviewed the medical records indicated that Malone's mother "has needed support for the majority of her life[.]"  [*Id.* at 35].

Elsewhere, Malone proffers that he "has four successful, adult children."  [Case No. 98-183, Doc. 290, 18].  One of Malone's daughters indicated that Malone has "three daughters and one son" who "all have done well in [their] lives."  [Case No. 98-183, Doc. 290-1, 48].  Another daughter indicated that she planned to provide for Malone's needs upon his release.  [*Id.* at 50].  Malone's oldest daughter wrote that she was a licensed cosmetologist with her own hair salon and noted that her husband owns "a successful pilot business, which trails 18-wheelers."  [*Id.* at 52].  Malone's son delivers Coca-Cola products in Mobile, Alabama, and south Mississippi.  [*Id.* at 70].

Malone contends that he would work part-time for his uncle's pool and spa business upon his release from prison.  [Case No. 98-183, Doc. 290, 36].  The uncle provided a letter in support that claimed he could "provide part-time, flexible employment" to Malone to allow him to care for his mother (who also was the uncle's sister).  [Case No. 98-183, Doc. 290-1, 56].  He claimed that neither he nor his wife could provide for Malone's mother because both worked full-time.  [*Id.*].

In a footnote to the counseled motion, Malone purports to take "full responsibility for his role" in his past crimes.  [Case No. 98-183, Doc. 290, 10 n.7].  Malone provided a letter to the Court in which he called prison "a big wake-up call" to

alter his relationship with his family.  [Case No. 98-183, Doc. 290-1, 20].  He claimed that his past offenses were a "shortcut path" and "just a way to make some money" but noted that "people's lives were negatively impacted by [his] past mistakes."  [*Id.*].

Malone asserts that he submitted a request for compassionate release to the warden at his facility.  [Case No. 98-183, Doc. 290, 21 n.13].  The warden issued a denial letter because Malone did "not meet the criteria for Compassionate Release/Reduction in Sentence based on extraordinary or compelling circumstances."  [Exh. A].

This Court directed the United States to respond to Malone's motions.  [Case No. 98-183, Doc. 293; Case No. 98-194, Doc. 305].  As the United States prepared its opposition, it contacted two law enforcement officers who were involved in Malone's criminal investigation.  It has received letters from Alan Ducote and Paul Burch and has provided these letters to the Court as Exhibit B and Exhibit C to this submission.

## II.   Standard of Review

A court may reduce an inmate's term of imprisonment if "extraordinary and compelling reasons" support a reduction.  18 U.S.C. § 3582(c)(1)(A)(i).  The Guidelines provide a policy statement that identifies extraordinary and compelling reasons. U.S.S.G. § 1B1.13(b).  Under this framework, a court must conclude that: (1) the sentencing factors in 18 U.S.C. § 3553(a) support the defendant's release; (2) there are extraordinary and compelling reasons to release the defendant; and (3) the inmate would pose no danger to any person or to the community upon release.  *United States v. Tinker*,

6

14 F.4th 1234, 1237 (11th Cir. 2021). This Court may examine these factors in any order. *Id.* The inmate has the burden to establish eligibility for release. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (addressing a motion for a reduction pursuant to a different provision in § 3582(c)); *see United States v. Watts*, No. 96-00093-KD-C, 2020 WL 4586968, at *1 (S.D. Ala. Aug. 10, 2020) (DuBose, J.) (applying this standard to motions for compassionate release).

## III.   Discussion

This Court should deny Malone's motions for compassionate release. Malone has not satisfied any prong of the analysis. First, Malone has not provided an extraordinary and compelling reason that warrants his release. Second, Malone has not demonstrated that he poses no danger to the community upon release. Third, Malone has not shown that the sentencing factors in § 3553(a) warrant release. Accordingly, this Court should deny the motions.

### A.   Malone failed to provide an extraordinary and compelling reason for release.

As an initial matter, this Court should deny Malone's motions because he has not identified an extraordinary and compelling reason for his release. Compassionate release based on extraordinary and compelling reasons must be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has promulgated a policy statement that

defines the reasons that suffice as sufficiently extraordinary and compelling to warrant release.  U.S.S.G. § 1B1.13(b).  Recently, the Sentencing Commission amended this policy statement to enlarge these grounds.  U.S.S.G., Amend. 814.  Under a prior version of the policy statement, the Eleventh Circuit concluded that a district court could not reduce a sentence unless the reduction would be consistent with that policy statement.  *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

Malone invokes three prongs of the revised policy statement in § 1B1.13(b).  Specifically, he cites the provisions for family circumstances, other reasons, and the length of a sentence.  Taking each ground in turn, Malone has not carried his burden to establish an extraordinary and compelling reason for release.

### 1.    Malone is not the sole available caregiver for his mother.

Malone is ineligible for compassionate release based on his family circumstances because other individuals may care for Malone's ailing mother.  The "incapacitation" of a parent may provide an extraordinary and compelling reason for compassionate release if the inmate "would be the only available caregiver for the parent."  U.S.S.G. § 1B1.13(b)(3)(C).

The Court should begin with the latter portion of this analysis.  Assuming that his mother is incapacitated, Malone has not established that he is the only available caregiver.  On the contrary, his robust discussion of his family in his motions readily establishes that other caregiving arrangements are available.  *See United States v. Tolentino*,

8

No. 8:19-cr-486-VMC-AEP, 2022 WL 80440, at *2 (M.D. Fla. Jan. 7, 2022) (concluding that an inmate had not shown that he would be "the only prospective caregiver"). Malone touts his successful family throughout his motions for release. He has failed to show that these individuals—many of whom purport to stand ready to provide financial and emotional support on his behalf—are unable to provide that same care to his mother.

Malone's uncle plans to hire Malone into a part-time role to care for his mother (and the uncle's sister). Although Malone's uncle claims that he cannot care for his sister because he works full-time, he has not explained why he would be unable to hire other part-time help so that he could assist with the caregiving responsibilities. Similarly, Malone promotes that he "has four successful, adult children." [Case No. 98-183, Doc. 290, 18]. These children submitted letters on his behalf and pledged financial and emotional support for Malone upon his release. It appears that many or all these children live in the Mobile area and that Malone has numerous other family members in the area. Malone has not demonstrated that these successful, adult family members are unable to assist with the care of his mother. Given that Malone's release plan calls for him to work only part-time, his mother likely would require financial support from other family members. Based on Malone's submissions, it appears that these family members could provide physical care as well. At the base, Malone has not carried his burden to show that he is the only available potential caregiver.

9

In addition, it is far from clear that Malone's mother is incapacitated. Malone certainly has provided documentation that indicates his mother suffers from significant illnesses. A physician's analysis indicates that she needs continued care. [Case No. 98-183, Doc. 290-1, 36]. The use of the term incapacitation, though, implies an inability to understand or make basic life decisions. In other contexts, incapacity refers to a legal threshold in understanding. *See, e.g., Brown v. Williamson*, 134 F. Supp. 2d 1286, 1291 (M.D. Ala. 2001) (addressing definitions of incapacity in Alabama law). A similar standard should apply in this context. Although Malone has provided hundreds of pages of medical records on his mother's health, he has not clearly met this demanding standard. On the contrary, the record suggests that Malone's mother has struggled with similar infirmities for decades. Malone has the burden to demonstrate that his mother actually is incapacitated. He did not carry that burden here. Malone has not demonstrated his eligibility on this ground.

2.   **Malone has not identified circumstances that constitute "other reasons" for compassionate release.**

Malone has not identified a separate basis for compassionate release that is similar in degree to the other applicable grounds for compassionate release. The first four paragraphs of the policy statement provide general grounds for compassionate release—serious medical conditions, advanced age, family circumstances, and victims of sexual or physical abuse. U.S.S.G. §§ 1B1.13(b)(1)–1B1.13(b)(4). A separate

paragraph that follows provides an additional basis for a reduction if an inmate "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* at § 1B1.13(b)(5). Previously, this provision required a determination by the BOP. *Bryant*, 996 F.3d at 1263. The current version imposes no such requirement. It does require a court to conclude, though, that the other grounds are similar in gravity to those set out in the preceding paragraphs. *United States v. Smith*, No. 14-CR-20014-RAR, 2024 WL 1529158, at *3 (S.D. Fla. April 8, 2024).

Malone raises three reasons: his mother's health, the length of his sentence, and rehabilitation. These reasons do not suffice. As set out above, Malone did not make an adequate demonstration of extraordinary and compelling family circumstances under § 1B1.13(b)(3). The information he has provided strongly suggests that other family members are available to share in the care for Malone's mother. Section 1B1.13(b)(5) does not simply lower the burden for an inmate who strikes out on another ground. On the contrary, it provides relief for an inmate who steps forward with other similar reasons that are comparable in scope to the other grounds for compassionate release. Malone's family circumstances do not suffice.

Next, Malone points to the length of his sentence. The policy statement includes a separate exception that allows for limited consideration of unusually long sentences.

11

U.S.S.G. § 1B1.13(b)(6).  The United States addresses that exception separately below. Other than that exception, the policy statement provides that the Court should not consider changes in the law to assess whether an extraordinary and compelling reason exists.  *Id.* at § 1B1.13(c).  This Court should not consider intervening changes of law for the purposes of § 1B1.13(b)(5).

As part of this argument, Malone also raises an alleged sentencing disparity.  He argues that his sentence is longer than that of similarly culpable co-defendants.  Malone acknowledges, though, that his co-defendants pleaded guilty.  A defendant who proceeded to trial is not similarly situated to defendants who pleaded guilty.  *United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009) (concluding that a defendant who was convicted after a trial was not similarly situated to individuals who pleaded guilty in state court); *see also United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016) ("[D]efendants who cooperate with the government and enter written plea agreements are not similarly situated to a defendant who provides no assistance and proceeds to trial.").  In addition, Malone has not demonstrated that these defendants are similarly situated in other respects.  Malone participated in multiple significant drug conspiracies and amassed a substantial criminal history.  Accordingly, Malone did not carry his burden to develop this disparity argument.

Even if Malone could develop this argument further, alleged sentencing disparities are not similar in degree to the circumstances in the other operative

paragraphs. In essence, these paragraphs focus on changes in a defendant's circumstances while in prison. A sentencing court assesses the need to avoid sentencing disparities at the time of sentencing. 18 U.S.C. § 3553(a)(6). Of course, Malone was subject to a statutory sentence of life at the time of his sentencing. Malone's argument on that point, however, relies on intervening changes in law. The policy statement precludes consideration of changes in law with a limited exception in § 1B1.13(b)(6). U.S.S.G. § 1B1.13(c). Section 1B1.13(b)(5) does not incorporate or provide for consideration of the circumstances in § 1B1.13(b)(6). Thus, Malone's arguments on the length of his sentence also are inadequate.

Finally, Malone points to his rehabilitation. Rehabilitation does not suffice as a standalone ground for release. *Id.* at § 1B1.13(d). It only may be considered in connection with other circumstances. *Id.* Malone has provided substantial evidence of good behavior while in prison, but that evidence is insufficient for purposes of eligibility under § 1B1.13(b)(5) because it stands alone. Malone's other bases for relief clearly are insufficient grounds for relief. Consequently, rehabilitation evidence cannot combine with these other inadequate factors to nudge Malone's inadequate demonstration over the line.

### 3. Malone is not serving an unusually long sentence.

Malone also is ineligible for release based upon the length of his sentence. A revision to the policy statement allows the Court to consider "a change in the law (other

than an amendment to the Guidelines Manual that has not been made retroactive)" toward an extraordinary and compelling reason. *Id.* at § 1B1.13(b)(6). The Court should consider such a change "only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." *Id.* This Court should decline to apply this provision here for two reasons. First, § 1B1.13(b)(6) is invalid. Second, Malone's sentence is not unusually long regardless.

### a.   Section 1B1.13(b)(6) is invalid.

This Court should conclude that § 1B1.13(b)(6) is invalid because it conflicts with the text, context, and purpose of the compassionate release statute as well as Congress' decisions on retroactive legal changes. These conflicts render the provision unenforceable.

Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Nonetheless, any policy statement should be "consistent with all pertinent provisions of any Federal statute" because the Guidelines do not prevail over statutory guidance. *Id.* at § 994(a). Although the Sentencing Commission has broad authority, the Supreme Court has recognized that it "must bow to the specific directives of Congress." *United States v.*

14

*LaBonte*, 520 U.S. 751, 757 (1997).  Indeed, the Eleventh Circuit has analogized the Sentencing Commission to federal administrative agencies that promulgate regulations. *United States v. Dupree*, 57 F.4th 1269, 1273–74 (11th Cir. 2023) (*en banc*).  Just as the commentary to the Guidelines cannot expand the interpretation of unambiguous provisions in the Guidelines, the Guidelines themselves should not contradict the plain meaning of a statute.  *LaBonte*, 520 U.S. at 757.

Congress requires an inmate to identify circumstances that are both extraordinary and compelling to warrant release.  18 U.S.C. § 3582(c)(1)(A)(i).  An intervening change in the law is neither extraordinary nor compelling.  This Court should begin its analysis of § 3582(c)(1)(A)(i) with the plain language of the statute.  *United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023).  Dictionary definitions from the time of a statute's enactment can aid in that understanding.  *Id.*  Congress included the extraordinary and compelling language in the Sentencing Reform Act of 1984.  Pub. L. 98-473, Ch. II, § 212(a)(2) (1984).  As the Sixth Circuit previously noted, dictionaries defined "extraordinary" to mean "most unusual, far from common, and having little or no precedent."  *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (*en banc*) (internal quotation marks omitted, relying on *Webster's Third New International Dictionary* (1971)).  Likewise, the term "compelling" meant "forcing, impelling, driving" in *Webster's Third New International Dictionary.  Id.* (internal quotation marks omitted).  Consequently, an extraordinary and compelling reason "is one that is unusual, rare, and forceful."  *Id.*

15

Nonretroactive changes in law are commonplace in the criminal justice system. As the Supreme Court has explained, the "ordinary practice" in federal sentencing "is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). Notably, Malone relies on changes to 21 U.S.C. § 841 with respect to the qualifying predicates for certain statutory sentence enhancements. Congress amended those enhancements to establish additional criteria for predicate offenses in 2018 as part of the First Step Act of 2018. Pub. L. 115-391, § 401(a), 132 Stat. 5194, 5220 (2018). When Congress enacted these amendments, it provided that the changes would "apply to any offense that was committed before the date of enactment of this act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* at § 401(c), 132 Stat. at 5221. This retroactivity language expressly closed the door to those defendants who had been sentenced prior to the First Step Act's effective date. Thus, § 401 of the First Step Act applied the same "ordinary practice" that the Supreme Court recognized in *Dorsey*. 567 U.S. at 280.

Prior to the amended policy statement, most circuits analyzed the statutory text directly to discern those reasons that qualified as extraordinary and compelling. *See Bryant*, 996 F.3d at 1259–62 (discussing other circuits' approaches). In contrast to these other circuits, the Eleventh Circuit applied the prior policy statement in § 1B1.13. *Id.* at 1262. The *Bryant* Court, however, did not pass judgment on the Sentencing

16

Commission's amendments to § 1B1.13.

As this Court interprets the proper scope of the Sentencing Commission's statutory authority, the approaches in other courts provide context on the plain meaning of § 3582(c)(1)(A)(i). Those courts split on that meaning. *McCall*, 56 F.4th at 1065 (noting the circuit split but concluding that the plain text of § 3582(c)(1)(A)(i) supported a different outcome); *see also United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (discussing the circuit split). As the *McCall* court also pointed out, those courts that took a different view also recognized that courts should not grant compassionate release based strictly on changes in the law. 56 F.4th at 1065.

After the Sentencing Commission amended the policy statement, district courts have begun to address this issue. Those district courts have split on the question as well. *Compare United States v. Gipson*, No. 4:93-cr-00005-O, 2024 WL 1048139, at *7 (N.D. Tex. March 8, 2024) (concluding that the Sentencing Commission exceeded its authority with the enactment of § 1B1.13(b)(6)) *with United States v. Ware*, - - - F. Supp. 3d - - - -, 2024 WL 1007427, at *7 (N.D. Ga. March 6, 2024) (concluding that the Sentencing Commission lawfully exercised its authority).

At the base, this Court should conclude that § 1B1.13(b)(6) exceeded the Sentencing Commission's authority. Finality is essential to the criminal justice system, and a sentence typically is final once a court imposes it. 18 U.S.C. § 3582(b). Nonretroactive changes are the norm, not the exception, in federal sentencing law.

17

Thus, this Court should follow the analysis set out in *McCall*. 56 F.4th at 1055–66.

This conclusion particularly is appropriate when Congress expressly addressed the retroactive scope of a change in the law. Indeed, the Sentencing Commission expressly excluded amendments to the Guidelines that the Sentencing Commission had not made retroactive. U.S.S.G. § 1B1.13(b)(6). The provision is internally inconsistent insofar as it excludes nonretroactive Guidelines amendments while it simultaneously allows for consideration of nonretroactive statutory provisions. The consideration of such nonretroactive provisions would conflict with Congress' approaches to retroactivity. Crucially, Congress knows how to make intervening changes in the law retroactive, and its determination should control.

Malone's case provides a persuasive illustration of this point. His request for compassionate release relies on changes in sentencing law set out in the First Step Act. [Case No. 98-183, Doc. 290, 27]. Congress applied the changes upon which Malone now relies only to those defendants who had not yet been sentenced. Pub. L. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018). At the same time, Congress elected to make other changes in sentencing law retroactive to certain defendants. *Id.* at § 404, 132 Stat. at 5222. The application of § 1B1.13(b)(6) to this circumstance would contradict the careful balance Congress struck in the First Step Act.

To sum up, § 1B1.13(b)(6) exceeded the Sentencing Commission's authority. This Court should decline to apply that portion of the policy statement.

18

**b.      Malone has not identified a gross sentencing disparity.**

Alternatively, Malone has not demonstrated his eligibility under § 1B1.13(b)(6) because he has not established a "gross disparity" in his sentence "after full consideration of [his] individualized circumstances." U.S.S.G. § 1B1.13(b)(6).  A gross disparity implies a difference of sweeping magnitude.  *See, e.g.*, *United States v. Mann*, No. 6:04-031-DCR-1, 2024 WL 666324, at *3 (E.D. Ky. Feb. 16, 2024) (concluding that a defendant's "new term of incarceration would not result in a disparity with the magnitude that would constitute an extraordinary and compelling circumstance").

Malone has not demonstrated that sort of gross difference here.  He contends that he would face a Guidelines range of 324 months to 405 months in prison if he were sentenced today and asserts that he would be subject to a 15-year mandatory minimum sentence.  [Case No. 98-00183, Doc. 290, 13].  Although a life sentence is more severe, it is not grossly disparate in the light of Malone's conduct.  As Malone's PSI reflected, he participated in two large drug conspiracies.  Malone's criminal conduct yielded a series of criminal convictions.  The district court's observation in *Mann* applies equally to Malone's case: "[T]o declare the difference between his lifetime sentence and the penalty he would receive if he were sentenced today a 'gross disparity' would effectively disregard the totality of the serious criminal conduct for which he was sentenced."  2024 WL 666324, at *3.  At most, Malone has established a prospect that he might have received a different sentence if the Court sentenced him today.  He has

not shown, however, that the Court necessarily would have imposed a sentence in that range or that the sentence he received grossly is disparate to the sentence he would receive now.

In addition, this Court should reject Malone's assertion that a life sentence by itself creates a gross disparity. [Case No. 98-183, Doc. 290, 27]. Although some courts have adopted that view, it is far from universal. *See Mann*, 2024 WL 666324, at *3 (concluding that a life sentence was not a gross disparity when viewed in the context of the defendant's criminal conduct). Section 1B1.13 contemplates an individualized assessment. As discussed in more detail below, Malone's criminal history and the scope of his criminal conduct in these conspiracies continue to provide support for his sentence. *Id.* at *4 (considering a defendant's criminal history and the seriousness of his conduct). Indeed, even Malone's estimate of his Guidelines range establishes a high probability that a court would order Malone to spend much of his adult life in prison for his offenses. Malone did not carry his burden to establish a gross sentencing disparity that warrants compassionate release.

**B.     Malone poses a danger to the community if released.**

Malone poses a risk to the community if the Court releases him. The policy statement requires a determination that "the defendant is not a danger to the safety of any other person or to the community" to warrant early release. U.S.S.G. § 1B1.13(a)(2). This provision directs the Court to the assessment of danger that arises

during pretrial detention.  18 U.S.C. § 3142(g).  These factors include the circumstances of the offense, the evidence against the person, the person's history and characteristics, and the seriousness of the potential danger.  *Id.*

These considerations cut against release.  Malone committed multiple serious drug offenses.  Although Malone seeks to downplay the risk of drug offenses, such crimes wreak substantial harms upon the community.  *United States v. Ingram*, 415 F. Supp. 3d 1072, 1079–81 (N.D. Fla. 2019) (collecting and addressing authorities on the dangers associated with drug offenses).  The United States established Malone's guilt at trial.  Nonetheless, Malone cast aspersions on the Court, the prosecution, and his defense counsel.  Even now, he accepts his responsibility only in passing.  He discusses that acceptance in a footnote, and his letter to the Court focuses on his family more than the community members Malone harmed through his criminal actions.  Indeed, Malone admitted that his crimes were a "shortcut path" but called them "just a way to make some money" to support himself and his family.  [Case No. 98-183, Doc. 290-1, 20].  Malone clearly has not accepted the seriousness of his offenses.  *See Ingram*, 415 F. Supp. 3d at 1080 (noting that drug sales can be more harmful to the community than an assault).  For similar reasons, Malone poses a significant danger if he is released.  *See id.* (observing that other judges have found a nexus between illegal drugs and violent offenses).

Crucially, Malone's past also reflects a significant risk of violence.  In addition to a string of drug offenses, Malone committed burglary in the second degree.  Malone's PSI reflected that he received treatment as a youthful offender for that offense, but he continued his life of crime by committing reckless endangerment and receiving stolen property.  Put simply, Malone's criminal history is not victimless.  He poses a significant risk to the public if he is released.

Malone points to his conduct while in custody, his age, and his release plan as points that cut against his risk to society.  [Case No. 98-183, Doc. 290, 34–36].  For starters, a person may still distribute drugs even at an advanced age.  *See, e.g.*, *United States v. Vega-Gutierrez*, 808 F. App'x 784, 785 (11th Cir. 2020) (unpublished) (addressing the sentence of a defendant who engaged in methamphetamine trafficking when he was 69 years old).  Malone's reliance on statistics provides insufficient comfort in the face of his frequent recidivism while he was outside prison.

Similarly, Malone's behavior while in custody provides at best a limited assurance that he will act similarly outside prison.  Malone has demonstrated that he can function well in a highly structured setting.  His release plan, however, does not include a similar structure.  Instead, Malone's release plan calls only for part-time work with an uncle's business while Malone ostensibly provides care for his mother.  This plan is problematic, however, because it leaves Malone with large portions of time with which he could return to criminal activity.  Outside his supervision by the probation office,

his work would be monitored only by family members who might have an incentive to shield him from any consequences for his actions. Malone has not demonstrated that his release plan provides a similar accountability structure that is likely to emulate his purported success in a custodial setting. *See United States v. Perez*, 559 F. Supp. 3d 15, 16 (D.N.H. 2021) (concluding that a release plan was inadequate when a defendant would return to a residence where he previously distributed drugs). Thus, this Court should deny Malone's motion because he continues to pose a danger to the community if he is released.

### C.   The § 3553(a) factors support Malone's life sentence.

Finally, this Court should deny Malone's motion because the § 3553(a) factors continue to support Malone's life sentence. An inmate who seeks compassionate release should establish that the § 3553(a) factors support a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(a). These factors include consideration of an individual's history and characteristics, the seriousness of the offense, deterrence of criminal conduct, and protection of the public. 18 U.S.C. § 3553(a).

Malone's life sentences remain appropriate in these circumstances. Drug conspiracies are dangerous, and Malone participated in two of them. *See Ingram*, 415 F. Supp. 3d at 1080 (emphasizing the seriousness of drug distribution). He also amassed a substantial criminal history, which included crimes like burglary and reckless endangerment. Crucially, Malone reoffended even when courts showed him leniency.

23

He received a youthful offender adjudication for the burglary conviction yet went on to commit many more crimes. This behavior demonstrates that Malone poses a significant risk to recidivate if he is released from prison.

In his motion, Malone largely avoids the aggravating circumstances in his case and focuses on the mitigating points. As noted, Malone compares himself to his codefendants. [Case No. 98-183, Doc. 290, 35]. Malone has not established, however, that he is similarly situated to these codefendants. On the contrary, Malone participated in multiple conspiracies, proceeded to trial, and had a substantial criminal history. Hence, he has not established any sizeable sentencing disparity here. Similarly, Malone has demonstrated some positive behavior while in prison, but he has offered inadequate assurances that he fully understands the gravity of his past transactions. The inadequacy of Malone's acceptance of responsibility cuts against his prison conduct and increases the risk of harm to the public if the Court orders his release. This Court should deny Malone's motion.

## IV.   Conclusion

In sum, Malone has not established that he is entitled to compassionate release. This Court should deny Malone's motion.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY
By:

_/s/ Scott A. Gray_
Scott A. Gray
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845
Fax: (251) 441-5131