IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**PERRY MALONE** | Case Nos. 98-cr-183, 98-cr-184 |

## MR. MALONE'S REPLY TO GOVERNMENT OPPOSITION TO 18 U.S.C. § 3582(c)(1)(A) MOTION

Perry Malone both qualifies for release under 3582(c)(1)(A) and is deserving of release for numerous compelling reasons that are supported by evidence. The Government argues that this Court should ignore virtually everything—BOP's own records showing Mr. Malone's immaculate record for the past two decades; BOP psychologist reports; expert affidavits; medical records; and letters of support from correctional staff. This Court should reject the Government's approach and confront the evidence in this case, which supports a grant of compassionate release.

The Government's objections fall into five categories:

*First*, the Government argues that the Commission exceeded its statutory authority when promulgating the "unusually long sentence category." Opp. at 13-18. This Court should join "the chorus of other district courts in this Circuit rejecting the Government's argument that the Sentencing Commission was without authority to enact this amendment." *United States v. Adley*, No. 03-20678-CR, 2024 WL 1961484, at *4 (S.D. Fla. May 3, 2024).

1

*Second*, the Government argues that the difference between a twenty-three to twenty-eight year sentence (Mr. Malone's Guideline range with good time credit considered)[1] and a life sentence does not amount to a "gross disparity." Opp. at 19-20. The Government cherry-picks one Sixth Circuit district court opinion to support its position and ignores several cases, discussed below, from this Circuit that recognize this gross disparity.

*Third*, the Government argues that this Court should invent potential caretakers for Mr. Malone's incapacitated mother, who suffers from dementia. Opp. at 8-10. But here, both the needs of Mr. Malone's mother, and the extreme challenges the family faces in attempting to care for her are obvious, understandable, and supported by Dr. Lee and medical records.

*Fourth*, the Government argues that Mr. Malone's individual circumstances do not satisfy the catch-all provision found in USSG § 1B1.13(b)(5). Opp. at 10-13. But its analysis entirely misses the crucial language in that provision, which allows for a *combination of circumstances* to rise to the level of extraordinary and compelling, as they do here. USSG § 1B1.13(b)(5) (emphasis added).

And *fifth*, this Court should also reject the Government's meritless claims that Mr. Malone poses a danger, and the 3553(a) factors weigh against release. Opp. at 20-24. We ask this Court to recognize Mr. Malone's compelling and extraordinary circumstances, as well as his profound transformation, and resentence him to time served.

---

[1] Mr. Malone has served twenty-five years and seven months, putting a sentence of time served squarely within his Guideline range. *See* Mot. at 7-8.

## I.  ARGUMENT

### A.  Sister Courts Agree That § 1B1.13(b)(6) is Valid.

The Commission lawfully exercised its authority in interpreting "extraordinary and compelling" to include "unusually long sentences." The Government's arguments to the contrary have been rejected time and again by courts in this Circuit.

The Government concedes that the Commission has "broad authority" to describe extraordinary and compelling circumstances as long as the Commission bows to the "specific directives of Congress." Opp. at 14. What the Government glosses over is that the Eleventh Circuit already laid out what that "specific directive" is: "The only boundary the SRA placed on the Commission's definition [of extraordinary and compelling circumstances] was that 'rehabilitation...alone shall not be considered an extraordinary and compelling reason.'" *United States v. Bryant*, 996 F.3d. 1243, 1249 (11th Cir. 2021) (quoting 28 U.S.C. § 994(t)); *see also United States v. Padgett*, No. 06CR13, 2024 WL 676767, at *4 (N.D. Fla. Jan. 30, 2024) ("Congress has said rehabilitation alone cannot be an extraordinary and compelling reason for a sentence reduction, but Congress has imposed no other limits on those terms. Neither the Sentencing Commission nor the courts are obligated to read into a statute an exception Congress did not enact.") (internal citations omitted).

Although the Government has argued that the Commission exceeded its authority in every motion based on an "unusually long sentence," to date the overwhelming chorus of district courts in this Circuit have disagreed. *See Padgett*, 2024 WL 676767, at *2-4 (holding defendant had extraordinary and compelling reasons for release when sentenced to life in prison under § 841); *United States v. Allen*, No. 09-cr-320, 2024 WL 631609, at *3-7 (N.D. Ga. Feb. 12, 2024) (same); *United States v. Ware*, No. 97-CR-00009, 2024 WL 1007427, at *4-8 (N.D. Ga. Mar. 6, 2024)

(finding extraordinary and compelling reasons for release when defendant was sentenced under § 924(c)); *United States v. Harper*, No. 04-cr-00218-SDG, 2024 WL 1053547, at *1-6 (N.D. Ga. Mar. 11, 2024) (same); *United States v. Smith*, No. 07cr48, 2024 WL 885136, at *1-3 (N.D. Fla. Feb. 2, 2024) (same).

Since the filing of Mr. Malone's initial motion, several other courts in this Circuit have found the Commission did not exceed its authority. *See Adley,* 2024 WL 1961484, at *4 (granting sentence reduction under (b)(6)); *United States v. Cousins*, No. 92-CR-250, 2024 WL 1516121, at *4 (N.D. Ga. Apr. 4, 2024) (same); *United States v. Bizzell*, No. 10-cr-145-MSS, 2024 WL 1832995, at *5 (M.D. Fla. Apr. 26, 2024) (same); *United States v. Colley*, No. 94-cr-7, 2024 WL 1516128, at *4-6 (N.D. Ga. Mar. 26, 2024) (same); *United States v. Parsons*, No. 95-08089-CR (S.D. Fla. Apr. 19, 2024) (same).[2]

The Government points to no "specific directive" that forbids the unusually long sentence category. Instead, the Government asks this Court to ignore Eleventh Circuit precedent and turn to the dictionary to define "extraordinary." Opp. at 15. But in *United States v. Bryant*, the Eleventh Circuit held that "the FSA did not give courts the freedom to define 'extraordinary and compelling reasons.'" 996 F.3d 1243, 1264 (11th Cir. 2021). The Government asks this Court to ignore this binding precedent. *See also Ware*, 2024 WL 1007427, at *6 (finding that the "Eleventh Circuit has not adopted the definitions of 'extraordinary' and 'compelling' that the Government cites").

The Government's position is especially troubling given its litigation position on this issue prior to the Commission's amendments. The Government's opposition discusses the circuit split on whether nonretroactive changes in law could be considered in the extraordinary and compelling

---

[2] Because *United States v. Parsons* is not available on Westlaw or Lexis, it is attached to Mr. Malone's motion as Exhibit V.

4

inquiry. Opp. at 16-17. What the Government fails to mention is how it thought this split should be resolved: by the Commission. *See, e.g.*, Brief for the United States in Opposition to Grant of Certiorari, *Jarvis v. United States*, No. 21-568, 2021 WL 5864543 (U.S. Dec. 8, 2021). The Government repeatedly, and successfully, opposed Supreme Court review of the circuit split to allow the Commission to address the issue. *See* USSC Reason for Amendment to § 1B1.13 at 11 (collecting cases). The Government underscored that "[n]obody disputes...that the Commission has the power—indeed, the statutory duty—to promulgate a policy statement that applies to prisoner-filed motions, or that it could resolve this particular issue." *Jarvis* Brief, 2021 WL 5864543, at *17. Now that the Commission has done what the Government asked, the Government decides that, in fact, it does dispute the Commission's power. As one district court in this Circuit has stated, "[t]he simplest explanation for the contradiction, then, is that the Government just disagrees with the Commission's policy choice." *Harper*, 2024 WL 1053547, at *4.

Even taking the Government's argument at face value—that nonretroactivity is "commonplace" in "federal sentencing law" so it cannot fit the dictionary definition of "extraordinary"—this Court should recognize it for the smokescreen that it is. Opp. at 15-16. The Commission did not claim that Congress' decision to make the changes to the § 841 enhancements nonretroactive is extraordinary and compelling, and the "unusually long sentence" category does not make those changes retroactive. The Commission instead created a narrowly tailored category where a non-retroactive change in law is one factor in making the defendant's circumstances extraordinary and compelling.[3] In addition to a non-retroactive change in law, defendants must

---

[3] One court in this Circuit discussed the difference between nonretroactivity and an unusually long sentence: "[T]he policy statement and statute exist easily in tandem. There is 'no inherent incompatibility' between Congress's decision to not make a sentencing law retroactive and the Commission's policy giving judges the discretion to consider a change in law as part of a narrow

5

show that they (1) have an unusually long sentence, (2) have served ten years of that sentence, (3) there is a gross disparity between their sentence and the sentence likely to be imposed now, and (4) that their individualized circumstances compel relief. USSG § 1B1.13(b)(6). As one district court in this Circuit explained, "the Court's consideration of the nonretroactive change in law is a measuring stick for the Court to use to determine if the sentence defendant is serving is, in fact, unusually long—it does not *per se* make a defendant eligible for compassionate release." *Ware*, 2024 WL 1007427, at *7 (emphasis in original).

In sum, the Government asks this court to ignore the Commission, Eleventh Circuit precedent, sister district courts in this Circuit, and the Government's own prior briefs to the Supreme Court. The Government asks all of this to keep Mr. Malone—a man with an "unheard of" record of rehabilitation in his twenty-five years in prison—imprisoned for the rest of his life on a sentence that Congress no longer believes fair nor just. Ex. A at ¶ 14 (Letter from Exp. Forrest). The Defense asks this Court not to bend over backwards to accommodate the Government here and instead "join the chorus of other district courts in this Circuit" that have found that (b)(6) is a valid exercise of the Commission's statutory authority. *Parsons*, No. 95-cr-08089, at *6 (Ex. V).

**B. The Difference Between a Life Sentence and Any Other Sentence Less Than Life Is a Gross Disparity.**

The Government also completely ignores Eleventh Circuit district courts when it argues that Mr. Malone does not have a gross disparity. Despite the Government's assertion that "it is far from universal" that a life sentence by itself creates a gross disparity, Opp. at 20, numerous district courts in this Circuit have found that the difference between a life sentence and "any sentence less than life" makes for a gross disparity. *Allen*, 2024 WL 631609, at *4-7; *Padgett*, 2024 WL 676767,

---

sentencing provision available to only a select set of defendants." *Harper*, 2024 WL 1053547, at *4 (citing *Bryant*, 996 F.3d at 1263).

at *2-4; *Vanholten*, 2023 WL 8357739, at *3; *Parsons*, No. 95-08089-CR, at *10 (Ex. V). The defense can find no cases in this Circuit finding otherwise, and the Government cites none. Indeed, district courts in this Circuit have found that a gross disparity is one that is "glaringly noticeable," *Adley*, 2024 WL 1961484, at *5, not "a difference of sweeping magnitude," as the Government hopes for. Opp. at 19. Furthermore, several courts have found that a gross disparity exists for sentences far less than life. *See Adley*, 2024 WL 1961484, at *5 (finding that a five-and-a-half year difference is a gross disparity); *Ware*, 2024 WL 1007427, at *8 (fourteen year difference is a gross disparity); *Colley*, 2024 WL 1516128, at *5 (twenty-four year difference is a gross disparity); *Cousins*, 2024 WL 1516121, at *5 & n.4 (thirty-six year difference is a gross disparity); *Bizzell*, 2024 WL 1832995, at *5 (forty year difference is a gross disparity). The Government relies exclusively on *United States v. Mann*, a Sixth Circuit case currently on appeal that appears to be an outlier across the country. Opp. at 20; No. 04-031-DCR-1, 2024 WL 666324 (E.D. Ky. Feb. 16, 2024). The Defense asks this Court to instead follow the overwhelming weight of in-circuit opinions and find that Mr. Malone's life sentence is grossly disparate from the sentence likely to be imposed today.

### C. Mr. Malone's Mother Is Clearly Incapacitated and He Is the Only Person Available to Provide the 24/7 Care She Needs.

The Government's claim that his mother is not incapacitated is without merit. Opp. at 10. First, the Government makes no attempt to discredit Dr. Lee's opinion nor the information in Mr. Malone's mother's medical records. Dr. Lee's professional opinion informs the court:

> "[I]t is important for Ms. Warren to be under the care of someone who can be with her 24/7 as she is a fall risk … and needs a lot of assistance with her day-to-day activities. Ms. Warren unfortunately will only continue to have progressive functional and cognitive decline."

7

Ex. G at 3. Instead of contesting these facts, the Government offers two definitions of incapacitation. The first definition, offered without citation, states that incapacitation "implies an inability to understand or make basic life decisions." Opp. at 10. For the Government's second definition of incapacitation, it cites *Brown v. Williamson*, a civil case from 2001 which discusses the capacity threshold for a person to be entitled to bring a suit under state law. 134 F. Supp. 2d 1286, 1291 (M.D. Ala. 2001). While *Brown* does not interact at all with § 3582(c)(1)(a), it does refer to an Alabama law that defines an "incapacitated person." *See* Ala. Code Sec. 26-2A-20(8). That law defines incapacitated as "any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, physical or mental infirmities accompanying advanced age....to the extent of lacking sufficient understanding or capacity to make or communicate responsible decisions." *Id.* The Government cites no case law stating this Alabama state law is the definition to follow in defining incapacitation under § 3582(c)(1)(a). *See* Opp. at 10. However, even following the Government's preferred definitions, Mr. Malone has clearly met them both. His mother has suffered from a mental illness most of her life—schizophrenia. Mot. at 13. She most recently suffers from a physical and mental infirmity that accompanies advanced age—dementia at the age of 76. *Id.* And the medical records, family letters, and Dr. Lee's report document an "extent of lacking sufficient understanding or capacity to make or communicate responsible decisions." Mot. at 14; *see also* Ex. R at 1, 8, 238, 441, 543 (C. Warren Med. Rec.). The Government's assertions that Mr. Malone's mother is not incapacitated are conclusory, speculative, and lacking in any record or proof for the court to consider.

      The Government attempts to sideline the Defense's expert affidavits, family letters, and case law by citing *United States v. Watts* for the assertion that the defendant bears the burden of proof. Opp. at 7; No. 96-00093-KD-C, 2020 WL 4586968 (S.D. Ala. 2020). Mr. Malone does not

disagree that he bears the burden of proof. However, one district court found that the defendant must establish merely a "sufficient basis for compassionate release." *Ware*, 2024 WL 1007427, at *3. Other district courts have recognized the burden is by a preponderance of the evidence. *See, e.g. United States v. Grasha*, No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020); *United States v. Cole*, 2022 WL 1082480 (W.D. Pa. 2022); *United States v. Gonzalez*, 547 F. Supp.3d 1083, 1085-86 (D.N.M. 2021); *United States v. Aruda*, 472 F.Supp.3d, 847, 850 (D. Haw. 2020), *rev'd on other grounds*.

Mr. Malone's numerous exhibits clearly satisfy either the preponderance of the evidence or sufficient basis standard. Two of the cases the Government cites show how Mr. Malone has met his burden where others could not. Opp. at 7-9, citing *Watts*, 2020 WL 4586968 (S.D. Ala. Aug, 10, 2020); *United States v. Tolentino*, No. 19-cr-486-VMC-AEP, 2022 WL 80440 (M.D. Fla. Jan. 7, 2022). *Tolentino* is a *pro se* motion where the defendant sought early release to care for his child as his wife dealt with anemia, migraines, and hearing loss. *Tolentino*, 2022 WL 80440, at *1. Importantly, the defendant provided no evidence of his wife's incapacitation—in fact, he never claimed she was incapacitated nor that he was the only available caregiver. *Id.* at *2. Rather, he only wanted to help his wife. *Id.* at *1-2. In *Watts*, the defendant made a claim that his medical condition was extraordinary and compelling but failed to provide his diagnoses or any medical records for the court to consider. *Watts*, 2020 WL 4586968, at *1-2. In denying, the court noted:

> Watts simply listed certain criteria from the Policy Statement and then stated that he met the criteria…[i]n sum, there is no evidence or info from which the Court could determine whether Watts' has met the criteria for a reduction of sentence based on extraordinary and compelling reasons.

*Id.* at *2. Unlike *Watts*, Mr. Malone provided everything this Court needs to make such a finding, including diagnoses, medical records showcasing his mother's decline, and an expert opinion on her diagnoses and continued deterioration. Mot. at 13-15. Mr. Malone also provided overwhelming

9

evidence of his family's circumstances and why they cannot provide the 24-hour care their mother needs. *See* Exs. C, G, I, J, K, M, Q. Mr. Malone provides a history of (1) how his mother's health has significantly deteriorated to the point of needing constant care, and (2) how the deaths of two aunts, lost earnings, and how the full-time employment and childcare needs of other family members stops them from being able to care for their mother. *Id.* at 14-15. The Government puts forth no evidence to rebut anything Mr. Malone has offered, failing to provide any records, letters, expert opinions, treatises, websites, or articles for the Court to consider. It only offers a conclusory statement that, in their uninformed view, Mr. Malone's mother is not incapacitated and her family can already provide the round-the-clock care his mother so clearly needs.

Next, the Government postulates that the Malone family could simply hire a caregiver. Opp. at 9. This suggestion is both offensive and not supported by the law. For a working-class family, desperately choosing between keeping their jobs or providing sufficient care to their mother who suffers from advanced dementia, the choice is not as simple as hiring a caregiver. Other courts have recognized as much. *See* Mot. at 18-19 (citing five cases that recognize that families cannot simply outsource care, especially when caregivers are placed in a dilemma of choosing between providing care or keeping their employment).

### D. Section (b)(5) Also Supports a Finding of Extraordinary and Compelling Circumstances.

This Court can and should find that the *combination* of circumstances compelling a sentence reduction warrant relief. Here, the Government again misses the mark. The Government considers each of Mr. Malone's grounds for relief in isolation, Opp. at 11-13, but fails to address his combination of circumstances, as allowed by the statute. *See* § 1B1.13(b)(5) ("The defendant presents any other circumstances or *combination of circumstances*, that when considered by themselves or *together with any of the reasons* described in paragraphs (1) through (4), are similar

10

in gravity.") (emphasis added). The Seventh Circuit has explained that circumstances should not be analyzed in isolation:

> If we conceive of "extraordinary and compelling reasons" as those differentiating one prisoner's situation from 99% of other prisoners, it is easy to see how Circumstance X could be true of only 10% of prisoners, Circumstance Y of 10%, and Circumstance Z of 10%—each insufficient to meet the threshold, but if they are independent then collectively enough to place the applicant among only 0.1% of all federal prisoners. We do not say here that 99% is the threshold for "extraordinary and compelling reasons...Our point, rather, is that no matter how the threshold is defined, a combination of factors may move any given prisoner past it, even if one factor alone does not.

*United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023) (Easterbrook, J.). Although Mr. Malone maintains that his family circumstances and sentencing disparity considered alone make him eligible for a sentence reduction, even if they did not, this Court can and should consider them together with his impressive rehabilitation to be extraordinary and compelling reasons for release.

As for the argument that the sentencing disparity between Mr. Malone and his co-defendants exists because he did not plead guilty, the Government fails to recognize that the Guideline range—by reducing total offense level with an acceptance of responsibility—already incorporates this difference. *See* PSR at 11, ¶¶ 31, 33, 36. The defense does not argue that the difference in the Guideline range between Mr. Malone and his codefendants is a gross sentencing disparity, it argues that the difference between Mr. Malone's mandatory life sentence and his codefendants' sentences is a gross sentencing disparity.

### E. Mr. Malone Is Not a Future Danger and a Resentencing Is Consistent with the 3553(a) Factors.

Finally, the Government argues that Mr. Malone's resentencing would be inconsistent with the 3553(a) factors, and he would present a danger to society if released. Unable to dispute the mountain of evidence from the past twenty-five years that demonstrates that Mr. Malone would not be a danger to society if released, the Government attempts a Hail Mary by attaching two letters

11

from law enforcement officials, accusing Mr. Malone of much more serious crimes. *See* Gov. Exs. B, C. These letters are absurd. They are speculative and uncorroborated. And this Court should disregard them entirely. *See* Commentary to USSG § 6A1.3. ("[u]nreliable allegations shall not be considered"). The Government's own decision *not* to prosecute Mr. Malone because there was a "lack of sufficient evidence," *see* Gov. Ex. B, means that these allegations cannot be used against Mr. Malone in this proceeding twenty-five years later. To this point, the Government itself recognizes the irrelevancy of these letters, as it spent exactly none of its motion discussing them. *See* Opp. at 1-25.

The proper analysis here, under *Pepper v. United States*, is for this Court to assess future dangerousness by considering the sentencing factors in light of Mr. Malone's post-conviction conduct, to determine whether a new sentence is warranted. 562 U.S. 476, 491 (2011). Here, the evidence demonstrates that Mr. Malone would not be a danger to society. The BOP's own risk assessment tools define him as a low-risk of recidivism. Mot. at 28; Ex. N at 1 (BOP Progress Report). Mr. Malone's prison record, including his disciplinary history, is impeccable. He is trusted by BOP staff, who recognize his impressive rehabilitation. Ex. P (Letter from Chaplain Harris); Ex. F (Letter from Dr. Chadick). He is "now at an age where further crimes of the type he has previously committed are rare." *Cousins*, 2024 WL 1516121, at *6.

The government claims Mr. Malone has tried to "downplay the risk of drug offenses," and "accepts responsibility only in passing." Opp. at 21. This is simply not true. On a publicly available website, Mr. Malone states, "Truly, I am responsible for breaking the law and for choosing to sell drugs." The Third Strike, https://www.thirdstrikecampaign.com/home/perry-malone (last visited May 2, 2024). In his letter to this Court, Mr. Malone states with no uncertainty that he "made foolish, thoughtless, and costly decisions … [a]nd I understand that people's lives were negatively

impacted by my past mistakes." Ex. B at 1. Mr. Malone in no way minimizes that his behavior was wrong and hurt the community, and his actions since those offenses speak to his sincere desire to account for the transgressions of his youth. Lastly, he has a home plan that would allow him to seamlessly transition back into the community. *See United States v. Cantu*, 423 F.Supp.3d 345, 354 (S.D. Tex. 2019) (court found no danger when defendant has "a loving and caring family," and will stay in the home of his son); *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *4 (S.D. Cal. Mar. 3, 2020) (numerous family ties with offers of housing and employment weigh in favor of defendant not being a danger to community); *United States v. Johnson*, 619 F. Supp. 3d 81, 99 (D.D.C. 2022) (granting early release where release plan stated inmate would live with girlfriend and had no job lined up); *United States v. Lii*, 528 F. Supp. 3d 1153, 1167 (D. Haw. 2021) (granting early release where inmate would live with his sister who would help him secure employment).

The Government's arguments regarding the sentencing factors are best handled in the words of Chief Judge Altonaga of the Southern District of Florida when deciding *United States v. Parsons.* No. 95-cr-08089, at *12-13 (Ex. V). In *Parsons*, defendants sought compassionate release after serving at least twenty-five years of their mandatory life sentences, due to § 841 enhancements, for a drug distribution conspiracy involving firearms. Judge Altonaga stated:

> "Certainly, Defendants' offenses are serious, but Defendants have already served lengthy sentences with minimal disciplinary action and have expressed an intention to transition into society as law-abiding citizens. In sum, the Government's argument applies the section 3553(a) factors in broad strokes to Defendants as if nothing had changed from the time they were sentenced. The Government makes no attempt to argue whether the lengthy sentences Defendants have already served are sufficient to meet the section 3553(a) purposes. The Court is especially persuaded by the fact that, given Defendants' life sentences, their good behavior has all occurred without the hope of early release."

*Id.* at *12-13 (internal citations omitted). Twenty-five years of incarceration is sufficient punishment for Mr. Malone's offense. The factors here weigh heavily in favor of a resentencing, and we respectfully request this Court use its authority conferred by the FSA and the Commission's amendments to Section 1B1.13 to reduce Mr. Malone's sentence.

Respectfully Submitted,

/s/ Amanda K. Rogers
   Amanda K. Rogers, Esq. PA Bar No. 331489, *Pro Hac Vice*
   With the assistance of Student-Attorneys of the Caritas Clemency Clinic, Patrick Brogan, Nic Johnson, & Conor Mach
   Caritas Clemency Clinic
   Villanova University Charles Widger School of Law
   299 N. Spring Mill Road
   Villanova, PA 19085
   amanda.rogers@law.villanova.edu
   610-519-5229


/s/ Katherine Moss Esq. Bar No. 9984014B
   Southern Center for Human Rights
   60 Walton Street NW
   Atlanta, GA 30303
   kmoss@schr.org
   404-688-1202


*Counsel for Perry Malone*

## **CERTIFICATE OF SERVICE**

      The undersigned, Amanda K. Rogers, an attorney with the Caritas Clemency Clinic at Villanova University Charles Widger School of Law, hereby certifies that on May 7, 2024, I electronically filed this motion with the Clerk of the Court using CM/ECF system.

/s/ Amanda K. Rogers
Amanda K. Rogers, PA Bar No. 331489, Pro Hac Vice
Caritas Clemency Clinic
Villanova University Charles Widger School of Law
299 N. Spring Mill Rd.
Villanova, PA 19085
amanda.rogers@law.villanova.edu